IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| **IN RE:** | ) | **Case No. 15-32333-HCD** |
| **DARWIN MULLINS** | ) | **S.S.# xxx-xx-4105** |
| | ) | |
| **Debtor.** | ) | **Chapter 7 Bankruptcy** |

**CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND REMAX RESULTS TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 AND 330**

REBECCA H. HOYT-FISCHER, as Chapter 7 Trustee (the "Trustee") for the above referenced debtor(s) (together, the "Debtor"), by and through the undersigned counsel, files this Application for entry of an order authorizing retention of (1) BK Global Real Estate Services ("BKRES") under the terms set forth in the agreement (the "BKRES Agreement") attached to BKRES' Affidavit of Disinterestedness at ***Exhibit A*** (the "BKRES Affidavit") and (2) Remax Results ("Listing Agent") under the terms of the agreement (the "Listing Agreement") attached to Listing Agent's Affidavit of Disinterestedness at ***Exhibit B*** (the "Listing Agent Affidavit"). In support thereof, the Trustee respectfully states as follows:

**PRELIMINARY STATEMENT**

Trustee requests approval to retain BKRES and Listing Agent, at no cost to the estate, to negotiate with and persuade the first lienholder on certain real property in which the estate has no equity to (1) allow Trustee to sell such property at the highest price that the market will bear, (2) waive the resulting deficiency claim and (3) pay a 11 U.S.C. § 506 surcharge to provide a carveout for the benefit of the estate and pay all other sale expenses, including a 6% brokerage commission that will be shared equally by BKRES and Listing Agent only upon the closing of a sale that is approved by this Court.

BKRES and its affiliates have proprietary technology and a national team of experienced loan servicing specialists, asset managers, negotiators, trustee relation managers, real estate brokers and agents, closing specialists and attorneys with extensive experience in procuring the consent of mortgage lenders and servicers to sell over-encumbered properties and provide significant cash recoveries to selling estates with no equity, through the Consented Sale™ process described herein.

The proposed agreements are attached and provide that BKRES and Listing Agent will not be entitled to any compensation from the estate whatsoever under any circumstances. They will only receive and share a customary brokerage commission that is paid by secured creditor as a 11 U.S.C. § 506 surcharge approved by this Court.

The Trustee (1) believes that hiring BKRES and Listing Agent to pursue a Consented Sale™ will likely result in secured creditor paying a carveout for the benefit of the estate with proceeds from the public sale of an asset in which the estate has no equity and (2) expects to obtain secured creditor's agreement to a Consented Sale™, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the over-encumbered property will be sold, within the coming months.

## JURISDICTION

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

3. On September 28, 2015, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

4. Thereafter, the Trustee was appointed as the Chapter 7 trustee in this case.

5. The Trustee held and concluded the 341 meeting on December 14, 2015.

6. The Debtor is the sole owner of real property located at 29925 Priscilla Court, Elkhart, IN 46517 (the "Property"). The Debtor has claimed an exemption in the amount of $17,600.00. The Debtor is not entitled to an exemption unless the Real Estate is sold for more than the amount necessary to fully satisfy the Senior and Junior mortgages.

7. The Debtor's schedules reflect that the Property is currently worth $166,300.00 and is subject to a first mortgage lien (the "Senior Mortgage") in favor of JP Morgan Chase Bank (the "Secured Creditor") in an amount of $220,902.45.

8. The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain Secured Creditor's agreement and consent ("Consent") to:

a. sell the Property to whichever third party Trustee determines to have made the best qualified offer during a public sale approved by the Court;
b. buy the Property from the Debtor's estate if (and only if) no such offer is made;
c. release the Senior Mortgage and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and
d. agree to a 11 U.S.C. § 506 surcharge to pay all of the expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-

[1] The BK Score™ is a 100-point rating that is generated by a proprietary algorithm from 10 unique property attributes in order to consistently measure sales confidence and predict market value.

pocket expenses, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate.

9. Trustee expects BKRES and Listing Agent to obtain Secured Creditor's Consent and bring a separate motion seeking an order approving the sale of the Property (the "Motion to Approve Sale") within several months of the entry of the order sought by this Application.

10. By this Application, the Trustee requests authority pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to procure Secured Creditor's Consent, and (b) approve Secured Creditor's payment of the fees described below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

## APPLICATION

11. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 330 of the Bankruptcy Code permits the Court to "award to a trustee… or a professional person employed under section 327…(A) reasonable compensation for actual, necessary services rendered [by such party]… and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

12. As further described in the materials attached to their affidavits, BKRES[2] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders

[2] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

and servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity.

13. The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear. The Trustee further believes that such a sale is in the best interest of the Debtor's estate, but can only be achieved if Secured Creditor's Consent is first obtained. That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtor's estate.

14. In no event will the estate have any obligation to pay BKRES or Listing Agent. The terms of the BKRES Agreement and Listing Agreement provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission at closing in accordance with the order approving the sale.

15. BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

16. The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and Listing Agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

17. BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as ***Exhibit B*** is an Affidavit of Disinterestedness of BKRES. BKRES

also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent.

18. Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a). Attached hereto as ***Exhibit C*** is an Affidavit of Disinterestedness of Listing Agent. Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES.

19. The Carve Out provided to the bankruptcy estate from the surcharge pursuant to 11 U.S.C. §506 is not subject to any exemption claimed by the Debtor.

**CONCLUSION**

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code.

Date: February 16, 2016

Respectfully submitted,

By:/s/ Rebecca H. Fischer
Rebecca H. Fischer, #10537-72
Chapter 7 Trustee
401 E. Colfax Avenue, Suite 305
South Bend, IN 46617
Telephone: (574) 284-2354
Facsimile: (574) 284-2356

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2015, a copy of the attached Application to Retain BK Global Real Estate Services and Remax Results was served electronically through the court's ECF system upon the following parties:

U.S. Trustee
USTPRegion10.SO.ECF@usdoj.gov

John W. Van Laere
JVL@Jonesobenchain.com

And by regular U.S. mail upon the following:

Darwin W. Mullins
29925 Priscilla Court
Elkhart, IN 46517

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE:<br>DARWIN MULLINS<br><br>Debtor. | )<br>)<br>)<br>) | Case No. 15-32333-HCD<br>S.S.# xxx-xx-4105<br><br>Chapter 7 Bankruptcy |

**DECLARATION OF STEPHANIE GIVENS IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND REMAX RESULTS TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330**

The undersigned, Stephanie Givens ("Declarant") hereby states:

1. I am employed by BK Global Real Estate Services ("Applicant" or "BKRES"), which is an entity duly licensed as a real estate brokerage by the State of Texas located at 2000 E. Lamar Blvd., Suite 710, Arlington, Texas 76006. I am Applicant's broker-in-charge and am authorized by Applicant to submit this Declaration on Applicant's behalf in support of the annexed Application to Retain BKRES and in accordance with Bankruptcy Rule 2014.

2. Based upon the information discussed below, I believe that Applicant is a disinterested person and does not hold or represent any interest adverse to the interest of the Debtor's estate as that term is defined in Section 101(14) of the Bankruptcy Code.

3. To the best of my knowledge: (a) neither BKRES nor any of its employees has any connection with the Debtor, its creditors in this case, the Chapter 7 Trustee, the Office of the United States Trustee, or any employees thereof or any party in interest herein; (b) BKRES and each of its employees are "disinterested persons," as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) neither BKRES nor any of its employees hold or represent an interest adverse to the Debtor's estate.

EXHIBIT A

4. A description of the qualifications of, and services provided by, BKRES is attached as Schedule 1.

5. That I have read the application of the Trustee regarding the retention and compensation of BKRES and agreed to be bound by the terms and conditions represented therein.

6. That I further understand that the Court, in its discretion, may alter the terms and conditions of employment and compensation, as fully set forth in the BKRES Agreement that is attached as Schedule 2 hereto, as it deems appropriate.

Verified under penalty of perjury that the foregoing is true and correct this 12 day of January, 2016.

DocuSigned by:
S. Givens
A1F650D7CDAA41E...

Stephanie Givens
Corporate Broker

The foregoing instrument was acknowledged before me this 12 day of January, 2016, by Stephanie Givens who provided identification or is personally known to me and who aid take an oath.

Notary Public-State of Texas

My commission expires

CECILY MARIE LARD
Notary Public, State of Texas
My Commission Expires
August 06, 2019

# SCHEDULE 1

## STATEMENT OF QUALIFICATIONS AND SERVICES OF BKRES

BK Global™

BK Global™ is a national company with a bankruptcy service platform containing a network of certified BK real estate Brokers and Agents, a national marketplace for listing and submitting bankruptcy real estate purchase offers (www.bankruptcylistings.com), and a centralized team of loan servicing specialist that enable Federal Trustees to streamline and manage their real estate needs most effectively for the benefit of the bankruptcy estate and unsecured creditors. By integrating its unique services and implementing its proprietary tools, BK Global is poised to create industry standards and efficiencies.

Consented Sale™

A Consented Sale™ is an "enhanced" agreement between all requisite stakeholders, the most important being the lender/servicer, of a residential or commercial property for less than what the owner still owes on the mortgage. A Consented Sale™ is a beneficial alternative to foreclosure when a homeowner needs to sell and can no longer afford to make their mortgage payments. The lender agrees to accept less than the amount owed to pay off a loan now rather than taking the property back by foreclosure and trying to sell it later. Lenders agree to a Consented Sale™ because they believe it will net them more money than going forward with a lengthy and costly foreclosure process.

A Consented Sale™ is an "enhanced" short sale and BK Global™ is able to obtain pre-consent by utilizing its proprietary BK Score™ system that analyzes and provides lenders an immediate evaluation of the value of the property and its probability for sale. In addition, BK Global™ is able to agree with lenders/servicers on a strike price for each property, and utilize its national www.bankruptcylistings.com marketplace for listings and online offer management platform.

BK Score™

BK Score™ is generated from a finite set of data points in a prescribed sequence to achieve a resulting score between the values of 1 and 100. The BK Score™ is shared with trustees, servicers, courts, and software management platforms and indicates the likelihood that an asset in a bankruptcy is qualified for consented disposition. The higher the BK Score™ there is a better chance to sell the property. In addition to the presented scores, BK Global provides the trustee a solution to sell the asset which maximizes the benefit to the estate. BK Global™ is at the forefront of creating new industry standards for trustee services.

To consistently measure and predict market value of real estate assets nationally, in an ever changing and fluid real estate market, it is important to have a well-defined methodology that explains how values are derived. The BK Score™ uses multiple data points to predict sales confidence compared to the limited local market inputs used by real estate brokers who are not certified in short sales. BK Score™ incorporates a number of unique methodology questions that include the data points listed below.

**Highlighted BK Score™ Data Points**

- Asset Value / Liabilities / Liens
- Judicial / Non-judicial State Analysis
- Pro Se (Professional Legal Representation)
- Title Search
- Statement of Intent by Debtor
- Foreclosure Timeline Analysis
- Redemption Period Analysis
- Community / Non-community Asset
- Asset Valuation Model (AVM)

## BK Score™ Core Benefits

**Increased Confidence of a Consented Short Sale** – BK Score™ gives lenders, servicers and real estate professionals more precise information on which to determine baseline sales values to achieve a successful consented short sale.

**Accelerates the Short Sale Decision Process** – Technology that utilizes scoring systems allows lenders/servicers to make instant valuation and sales consent decisions. This is notable as applications for consented sale of property can be approved by lenders/servicers in hours rather than weeks for sales values which score above a lender's score cutoff.

**Reduces Risk of Completing a Cooperative Short Sale** – There are certain barriers to a short sale. Servicers are frequently wary of short sale offers because of concerns that they are settling the debt at too low a price. Greater probability that servicers will consent to a short sale is made possible thanks to BK Score™. The BK Score™ empowers any lender/servicer to quickly set a cut off price and begin the short sale process, without time-consuming phone calls, faxed documents, or any effort from the agent or trustee.

**Increases Transaction Transparency** – BK Global™ is integrated with most major lender/servicers nationally. The BK Score™, which has revolutionized the default servicing industry, helps servicers select and execute optimal baseline valuations based on measurable guidelines while driving efficiency, fostering transparency and facilitating compliance. With the use of BK Score™ agents and trustees can quickly collaborate and determine an appropriate list price that allow agents to begin pursuing sales offers with confidence.

The BK Score™ algorithm has been developed by industry experts that have over 30 years of experience in Distressed Real Estate and Bankruptcy Sales. To date, over 2 years of bankruptcy assets have been analyzed and scored using the BK Global Scoring system. BK Score™ is a trademark pending registration with the US Trademark and Patent Office.

BK Search™

BK Search™, powered by the leading national investigation firm Interfor Inc., enables trustees in the BK Global™ program to perform nationwide searches on all potential assets in bankruptcy. Trustees will receive an extremely valuable initial report prior to their 341(a) meeting, which will allow them to question uncovered assets. Interfor is a US based international investigation

and security consulting firm specializing in comprehensive intelligence services to the legal, corporate, financial communities and individuals. The company is staffed by highly skilled investigators and fraud examiners, many of whom have been associated with government, defense, and intelligence agencies worldwide, including the United States CID, CIA, DEA and FBI agencies. Interfor is fully licensed and operates in the United States, Europe, the Middle East, the Americas, Africa and Asia. The investigators are also supported by a sophisticated research division using state-of-the-art technology.

BK GLOBAL™
REAL ESTATE SERVICES

January 07, 2016

Rebecca Hoyt-Fischer
Chapter 7 Trustee
401 E. Colfax Ave. Ste. 305
South Bend, IN 46617

Re: Darwin Mullins
Agreement to Negotiate Consented Sale for 29925 Priscilla Ct, Elkhart, IN 46517-9005

Dear Ms. Fischer:

This letter confirms the Agreement to Negotiate a Consented Sale for the referenced property ("Property") and confirms the undersigned's ("our," "we" or "us") agreement to negotiate a Consented Sale on the following terms and conditions (collectively, the "Agreement"):

1. Following entry of an order approving this Agreement, we and our affiliate, Bankruptcy Global Holdings, LLC, will make commercially reasonable efforts to procure the consent and agreement ("Consent") of the senior mortgagee ("Secured Creditor") to:

a. sell the Property to whichever third party you determine to have made the best qualified offer during a public sale approved by the court;

b. buy the Property from the estate if (and only if) no such offer is made;

c. release its lien and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

d. agree to a 11 U.S.C. § 506 surcharge to (x) pay our fee and expenses, any commission payable to the local real estate broker and all other fees and expenses associated with the sale, and (y) provide a carveout for the benefit of allowed unsecured creditors of the estate.

2. At our recommendation, you have retained a local real estate broker to market the Property for sale to the public under a separate listing agreement. We will assist them by coordinating all aspects of the listing and sale process that involve Secured Creditor's Consent. We will also prepare and deliver any and all reports and information about the Consent, listing and sale process that you reasonably require. However, your local listing broker will be solely responsible for providing you with all other brokerage services associated with selling the Property, including inspecting it to confirm condition and occupancy, preparing any comparative market analysis, Broker Asset Valuation (Streamlined BPO) and Broker's Price Opinion (BPO), recommending a listing price, preparing marketing materials, including photographs and signage, and displaying the same at the Property and on the Multiple Listing Service, conducting all open houses and showings, and helping you evaluate and negotiate purchase offers, all at their sole cost and expense.

3. The term of this Agreement will commence when you sign and return a copy of this letter and it is approved by the court. This Agreement will automatically terminate upon the closing of the sale of the Property, but may be terminated by either party for any or no reason at any time from and after 180 days from commencement.

4. There will be no fees due to, or payable by, either party under this Agreement, and neither party will be reimbursed by the other party for any cost or expense. Subject to the foregoing, you acknowledge and agree that our fee and expenses will be paid by Secured Creditor as a 11 U.S.C. § 506 surcharge, if and to the extent that Secured Creditor agrees and the court approves. You further acknowledge and agree that, if the Property is sold to a third party, we may receive some or all of our fee and expenses under a fee agreement with the local listing broker.

5. You will make commercially reasonable efforts to assist us in procuring Secured Creditor's Consent and marketing and selling the Property and hereby appoint us as your agent, and grant us power of attorney, to act on your behalf as trustee in connection with the same.

6. We acknowledge and agree that (a) you are not executing this Agreement in your individual capacity, but solely as trustee of the estate, (b) we do not and will not have any right or claim with respect to the estate and (c) our sole recourse for payment of our fee and expenses will be to Secured Creditor under the Consent and the local listing broker under our fee agreement, but only if and to the extent that the same are approved by the court.

7. This Agreement constitutes our complete agreement on this matter and supersedes all prior agreements and representations concerning the same. It may not be modified or amended except in a writing signed by both parties.

Please let us know if you have any questions regarding the foregoing or enclosed materials.

Otherwise, kindly confirm your agreement by signing and returning this letter with a copy of the order approving your application to retain us at your earliest convenience.

We look forward to working with you.

Sincerely,

**BK GLOBAL:**

**BL GLOBAL REAL ESTATE SERVICES**, a Texas limited liability company

By: S. Givens
Stephanie Givens, Broker-in-Charge

Acknowledged and agreed as of the date set forth above.

**TRUSTEE:**

Rebecca Hoyt-Fischer

**REBECCA HOYT-FISCHER** not individually but solely as Trustee in the referenced matter.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| **IN RE:** **DARWIN MULLINS** | ) | **Case No. 15-32333-HCD** **S.S.# xxx-xx-4105** |
| | ) | |
| **Debtor.** | ) | **Chapter 7 Bankruptcy** |

**AFFIDAVIT OF FRED JOHNSON IN SUPPORT OF APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND REMAX RESULTS TO PROCURE CONSENTED PUBLIC SALE**
**PURSUANT TO 11 U.S.C. § 327, 328 AND 330**

STATE OF INDIANA )
)
COUNTY OF Kosciusko )

Fred Johnson, being duly sworn, says:

1. I am a real estate agent duly licensed by the State of Indiana.

2. I am an agent of Remax Results, a Indiana Corporation, with the offices located at 358 Enterprise Drive, Warsaw, IN 46580 ("Listing Agent").

3. I am familiar with the Application to Retain Remax Results, filed by the Trustee ("Application") and the property described therein.

4. I believe that I am experienced and qualified to represent the Trustee in connection with the marketing and sale of the real property located at 29925 Priscilla Ct., Elkhart, IN 46517 (the "Property").

5. Remax Results has agreed to accept employment pursuant to the terms and conditions set forth in the Application and the proposed commission structure. Based upon my experience and knowledge of the real estate market, I believe that the commission structure proposed to be paid to Listing Agent does not exceed customary commissions in the applicable geographical area and are reasonable for the type of employment proposed.

6. Neither I nor any member of Listing Agent hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of 11 U.S.C. § 101(14), as required by § 327(a).

7. To the best of my information and belief, neither I nor the other members of this firm have any connection with the Debtors, their creditors, or any other party in interest or their respective attorneys or accountants, the U. S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy procedure except as set forth below.

EXHIBIT B

8. I represent no interest adverse to the Debtors or its estate in the matters upon which I am to be engaged.

FURTHER AFFIANT SAYETH NAUGHT.

Fred Johnson

FRED JOHNSON of
REMAX RESULTS

The foregoing instrument was sworn to and subscribed before me this 8 day of January 2016.

NOTARY PUBLIC

Julie Kay Coffman

Notary Public, State of Indiana

Julie Kay Coffman

Type, Stamp, or Print Name as Commissioned

JULIE KAY COFFMAN
Notary Public, State of Indiana
Kosciusko County
Commission # 657372
My Commission Expires
August 26, 2022

STATE OF INDIANA NOTARY SEAL

SEAL OF OFFICE

Provided as a member service by the INDIANA ASSOCIATION OF REALTORS®, INC.

# LISTING CONTRACT (EXCLUSIVE RIGHT TO SELL)

Date: ____________________

In consideration of services to be performed by RE/MAX RESULTS (Broker/Company, hereinafter referred to as "Broker") for Rebecca Fischer BK Trustee for, estate of Darwin Mullins ("Seller"), Seller appoints Broker as Seller's broker with irrevocable and exclusive right to sell, exchange, option, or lease the real property known as 29925 Priscilla Ct in Baugo Township, Elkhart County, Elkhart, Indiana 46517-9005 (zip code) legally described as: JP' Landings Lot 9 ____________________ (the "Property").

This contract begins on ____________________, and expires at 11:59 P.M. ____________________ subject to the following terms and conditions:

List Price: $ 159,000.00 Possession: ____________________

**Seller represents that Seller [X] is [ ] is not delinquent on any loans which could constitute a lien on the Property and the total loans affecting the Property do not exceed the list price and costs of sale. Seller is not a party to any bankruptcy proceeding.** Also, Seller has the capacity to convey the Property by a general Warranty Deed or by Trustee's Deed. Did the Seller acquire ownership of the property at a tax sale, Sheriff's sale, any judicial sale, or mortgage foreclosure proceeding? [ ] Yes [X] No. Seller [ ] is [X] is not a "foreign person" (individual or entity). Seller [ ] is [X] is not subject to the Foreign Investment in Real Property Tax Act. See http://www.irs.gov/publications/p515/index.html.

Terms of Sale: The Property may be sold for cash or any of the following methods indicated below:

| | | | |
|---|---|---|---|
| X | Conventional Mortgage | ____ | Conditional Sales Contract |
| ____ | Insured Conventional Mortgage | ____ | FHA |
| ____ | Assumption of Existing Mortgage Balance | ____ | VA |
| ____ | Other ____________________ | | |

Seller agrees to pay costs associated with financing not to exceed N/A.

Property Offered for Sale: The above list price includes the Property and all improvements and fixtures permanently installed and affixed thereto, **except** N/A

Items of Personal Property included in the sale: N/A

A. **EXCLUSIVE LISTING.** The parties understand and agree that this is an exclusive right to sell, option, exchange or lease listing, and Broker shall be entitled to the commission hereinafter established which shall be payable upon the occurrence of any of the following events:

1. at the time the Property is sold, optioned, exchanged or leased by any person, including the Seller, to any person during the term of this contract or any renewal or extension thereof,
2. at the time Seller, Broker, or any other real estate licensee secures a buyer or lessee ready, willing and able to purchase, option, exchange or lease the Property for such price and terms as specified, or such other price or terms as Seller may accept,
3. at the time an agreement is entered into to sell, exchange, option or lease during the term of this contract or any renewal or extension thereof, and ultimately completed after the termination of this contract,
4. the Property is sold, optioned, leased, or exchanged by Seller or any other person within -0- days after termination of this Listing Contract to any person procured in whole or in part by the efforts of Broker, any cooperating broker, or Seller, provided, however, this extension clause shall not apply if this Exclusive Listing Contract terminates and the Property is listed exclusively with another licensed broker, or
5. at the time of default by Seller to any valid, fully executed, written agreement to sell, option, exchange, or lease the Property.

Any commission required to be paid under items 1., 3. and 4. above shall be due and payable at the closing of the transaction when title to or any interest in the Property is transferred to a buyer or lessee. Any commission required to be paid under items 2. and 5. above shall be due and payable upon demand by Broker. In the event that commission is not paid when due, then Broker shall be entitled to interest at the rate of N/A % per annum until commission is paid.

If the Seller and a Buyer sign a Purchase Agreement, Option to Purchase Real Estate, Lease or the closing of the sale of the Property will not take place until after the term of this contract, then this contract shall automatically be extended to coincide with the closing date or term of the lease.

B. **BROKER'S COMMISSION.** The broker's commission charged by the listing Broker for services rendered, with respect to any listing, is solely a matter of negotiation between Broker and Seller and is not fixed, controlled, suggested recommended or maintained by the Indiana Association of REALTORS®, Inc., the local Board/Association of REALTORS®, the MLS (if applicable) or any person not a party to the contract.


Copyright IAR 2016

RE/MAX RESULTS, 358 Enterprise Drive Warsaw, IN 46580 Phone: 574.267.2904 Fax: Rebecca Fischer BK
Fred Johnson Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Seller shall pay in cash to Broker for services a total commission as follows:

1. 6.000 % of the selling/exchange price or option selling price, not less than $ N/A .
2. In the event of a purchase option, the Seller agrees to compensate Broker N/A % of the consideration paid for an Option to Purchase.
3. In the event of a lease, the Seller agrees to compensate Broker N/A % of all amounts to be paid by a lessee to Seller over the term of the lease.
4. Other: N/A .

**SELLER HAS BEEN ADVISED OF BROKER'S COOPERATIVE COMPENSATION POLICY, including the amount of compensation that will be offered to cooperating brokers which is 3.000 % of the selling price or $ flat fee .**

C. **COMMISSION; ATTORNEY FEES.** For purposes of this contract, the parties understand and agree that Broker's commission is deemed to be a share of the purchase money received by Seller. If any action is filed in relation to this Listing Contract, the unsuccessful party shall pay to the successful party a reasonable sum for the successful party's attorney's fees and court costs.

D. **EARNEST MONEY.** Broker is authorized to accept earnest money or any part of the purchase price and hold it in an escrow/trust account. In the event that Seller is to receive any portion of the earnest money, Seller authorizes Broker to keep any earnest money deposits up to the amount the commission would have been if the sale was completed in payment for Broker's expenses, services and advertising.

E. **MLS INFORMATION (IF APPLICABLE).** It is understood that the Broker may rely on the validity of the data pertaining to this Listing Contract which has been provided by the Seller, and the Seller agrees that Broker may disclose the data to a multiple listing service ("MLS"), Internet or any advertising media and that the Broker may furnish notice to a MLS or other provider of all changes of information concerning the Property. Seller has been advised of the benefits of marketing a property through a multiple listing service. Excluding a property from a multiple listing service may result in a lower number of offers received and lower sales price.

F. **INFORMATION REGARDING PROPERTY.** Seller acknowledges that the information on the Seller's Residential Real Estate Sales Disclosure Form (if applicable) and the information provided for the listing is true and correct, and that Seller is the owner of the Property or is the authorized agent(s) of the true owner with complete and full authority to act on behalf of the owner(s). Seller further warrants that no other listing contract is now in force with any other broker. The Seller(s) or authorized agent(s) agree to indemnify, actively defend and hold Broker, Company and its agents harmless from any damages, loss, liability and expenses including attorney fees and costs, arising from incorrect information or failure to supply material information regarding the Property, including, but not limited to the condition of appliances, heating, plumbing, electrical, sewage, major defects in structure, mold and/or other environmental conditions or hazards, location of property lines, public and private restrictions on the use of the Property, any loss or liability in conjunction with this agreement or with Broker or other licensees showing the Property including, but not limited to, injuries suffered by other licensees or prospective buyers.

G. **ENVIRONMENTAL CONTAMINANTS ADVISORY/RELEASE.** Seller acknowledges that Listing Broker, Selling Broker and all licensees associated with Brokers are NOT experts and have NO special training, knowledge or experience with regard to the evaluation or existence of possible lead-based paint, radon, mold and other biological contaminants ("Environmental Contaminants") which might exist and affect the Property. Environmental Contaminants at harmful levels may cause property damage and serious illness, including but not limited to, allergic and/or respiratory problems, particularly in persons with immune system problems, young children and/or the elderly.

**Seller agrees to consult with appropriate experts and accepts all risks for Environmental Contaminants and releases and holds harmless all Brokers, their companies and licensees from any and all liability, including attorney's fees and costs, arising out of or related to any inspection, inspection result, repair, disclosed defect or deficiency affecting the Property, including Environmental Contaminants. This release shall survive the closing.**

H. **AGENCY DISCLOSURES.**

1. **Office Policy.** Seller acknowledges receipt of a copy of the written office policy relating to agency.

2. **Agency Relationship.** I.C. 25-34.1-10-9.5 provides that a Licensee has an agency relationship with, and is representing, the individual with whom the Licensee is working unless (1) there is a written agreement to the contrary; or (2) the Licensee is merely assisting the individual as a customer without compensation. Licensee(Broker) represents the interests of the Seller as Seller's agent to sell the Property. Licensee owes duties of trust, loyalty, confidentiality, accounting and disclosure to the Seller. However, Licensee must deal honestly with a buyer and disclose to the buyer information about the Property. All representations made by Licensee about the Property are made as the agent of the Seller.
Seller is advised that the Property may be sold with the assistance of other Licensees working as buyer agents and that Licensee's company policy is to cooperate with and compensate buyer agents. Buyer agents are Licensees who


Copyright IAR 2016
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Rebecca Fischer

show the Property to prospective buyers, but who represent only the interests of the buyer. Buyer agents owe duties of trust, loyalty, confidentiality, accounting and disclosure to buyers. All representations made by buyer agents about the Property are not made as the agent of the Seller.

3. **Limited Agency Authorization.** Licensee or the managing broker may represent Buyer as a buyer agent. If such a Buyer wishes to see the Property, Licensee has agency duties to both Seller and Buyer, and those duties may be different or even adverse. Seller knowingly consents to Licensee acting as a limited agent for such showings.

If limited agency arises, Licensee **shall not disclose** the following without the informed consent, in writing, of both Seller and Buyer:

a. Any material or confidential information, except adverse material facts or risks actually known by Licensee concerning the physical condition of the Property and facts required by statute, rule, or regulation to be disclosed and that could not be discovered by a reasonable and timely inspection of the Property by the parties.
b. That a Buyer will pay more than the offered purchase price for the Property.
c. That Seller will accept less than the listed price for the Property.
d. Other terms that would create a contractual advantage for one party over another party.
e. What motivates a party to buy or sell the Property.

In a limited agency situation, the parties agree that there will be no imputation of knowledge or information between any party and the limited agent or among Licensees.

Seller acknowledges that Limited Agency Authorization has been read and understood. Seller understands that Seller does not have to consent to Licensee(s) acting as limited agent(s), but gives informed consent voluntarily to limited agency and waives any claims, damages, losses, expenses, including attorneys' fees and costs, against Licensee(s) arising from Licensee's(s') role of limited agent(s).

I. **SELLER AUTHORIZATION AND COOPERATION.** Seller agrees to provide Broker with the required information necessary for entry into a MLS, Internet or other advertising media, to include electronic media and the use of any exterior/interior photos, if applicable. Seller will cooperate with Broker by permitting the Property to be shown at reasonable times and authorizes Broker to place and remove "For Sale" and other signs on the Property.

1. Seller authorizes Broker and cooperating brokers, buyer brokers, Broker's personal assistants, contractors, inspectors, appraisers and others reasonably necessary to market the Property to enter the Property. Seller acknowledges that a buyer may enter the Property with contractors, inspectors or appraisers without being accompanied by Broker. Buyer or Buyer's broker may take videos, photos and electronic images of the Property.
2. Seller will provide Broker with key(s) necessary to access the Property.
3. Seller authorizes Broker to have duplicate keys made.
4. Seller agrees not to rent or lease the Property during the term of this Listing Contract without written notification to Broker.
5. Seller agrees that Broker may work with buyer brokers to assist in performing Broker's duties according to the terms of this Listing Contract.
6. Seller grants to Broker an exclusive, non-revocable, copyright license to disseminate, publish, modify and reproduce all of the content of this Listing Contract, including but not limited to, price and terms of financing on a closed sale, photographs, drawings, written descriptions, narratives, and motion pictures obtained or produced by Broker and Broker's agents pursuant to this Listing Contract to members of the Indiana Association of REALTORS®, Inc., to other brokers upon request and to a MLS, Internet or any advertising media. Seller agrees that Broker shall own all rights, title and interest, including but not limited to, any copyright in Property images taken by Broker's photographers or agents.
7. Seller authorizes its utility companies to divulge all utility information to Broker and to provide copies of utility statements, if requested. Seller's utility companies are as follows: N/A ______________________________.
8. Seller authorizes its Homeowner's Association (HOA) to divulge all HOA information to Broker and to provide copies of all HOA documents if requested. HOA Management Company: N/A ______________.
HOA Contact Information: N/A ______________.
Seller acknowledges there are homeowner's association fees and/or assessments in the amount of $ N/A ______ per ____N/a____, which have been paid by Seller through ____N/A____, ______.
9. Seller authorizes its lending institution to divulge all mortgage information to Broker and to provide copies of the note and mortgage, if requested. Seller's lending institution is N/A ______________________ and the mortgage loan number is N/A ______________.
If Seller's mortgage is subject to a pre-payment penalty, Seller agrees to give timely written notice to Seller's lender that the mortgage is to be pre-paid from the sale proceeds of the Property. It is acknowledged that Seller's failure to give this notice may result in a pre-payment penalty to be paid by Seller.
10. Seller [X] **does** [ ] **does not** authorize Broker to disclose the existence of written offers to Buyer. If Seller has authorized disclosure of the existence of offers on the Property, Broker shall also disclose, if asked, whether offers were obtained by the listing licensee, another licensee in the listing firm or by a cooperating broker. (NOTE: Disclosure of individual and company names is not necessary.)


Copyright IAR 2016
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Rebecca Fischer

J. **LOCKBOX/KEY AUTHORIZATION/USE.** To facilitate access to the Property, a lockbox installation [X] **is** [ ] **is not** authorized, subject to the following acknowledgments/conditions:

1. Seller will safeguard valuables. Seller accepts responsibility for preparing the Property to minimize the likelihood of injury, damage and/or loss of personal property.
2. Seller acknowledges Broker is not an insurer of Seller's real estate and personal property and waives claims against Broker and Broker's authorized persons for loss and/or damage. Seller further agrees to indemnify and hold harmless Broker and all authorized persons from claims by third parties from all loss and/or damage.
3. Seller instructs Broker to make reasonable efforts to notify Seller of showing requests. If Seller cannot be contacted to schedule a showing, Seller [X] **authorizes** [ ] **does not authorize** Broker to access the Property.
4. Where a tenant/lessee occupies the Property, it is Seller's sole responsibility to obtain tenant/lessee consent to allow the use of a lockbox/key and consent for Broker to access the property.

K. **FAIR HOUSING.** The parties acknowledge that the Fair Housing Act prohibits discrimination in housing because of race, color, national origin, religion, sex, familial status, and handicap.

The National Association of REALTORS® Code of Ethics also prohibits REALTORS® from discriminating on the basis of sexual orientation or gender identity.

L. **ADDITIONAL PROVISIONS.**

1. Seller understands the terms of this Listing Contract and has received a copy.
2. The parties to this contract agree that it contains the entire agreement of the parties and cannot be changed except by their written consent.
3. The parties to this contract agree that it is binding upon the parties' heirs, administrators, executors, successors and assigns.
4. Seller acknowledges receipt of an estimate of selling expenses.
5. The parties to this contract agree that this contract may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The parties agree that this contract may be transmitted between them electronically or digitally. The parties intend that electronically or digitally transmitted signatures constitute original signatures and are binding on the parties. The original document shall be promptly delivered, if requested.
6. Broker may refer Seller to other professionals, service providers or product vendors, including lenders, loan brokers, title insurers, escrow companies, inspectors, pest control companies, contractors and home warranty companies. Broker does not guarantee the performance of any service provider. Seller is free to select providers other than those referred or recommended to Seller by Broker.
7. Broker is not and shall not be charged with the responsibility for the custody, management, care, maintenance, protection or repair of the Property nor for the protection or custody of any personal property located thereon, unless provided for in another written agreement.
8. Seller consents to receive communications from Broker via telephone, U.S. mail, email, text message and facsimile at the numbers/addresses provided to Broker unless Seller notifies Broker in writing to the contrary.
9. Where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.
10. Seller discloses to Listing Broker that Seller is licensed and holds License # N/A .

M. **FURTHER CONDITIONS.**

N/A

| | | | |
|---|---|---|---|
| [signature] AGENT | RB14017363 IN LICENSE # | [signature] SELLER'S SIGNATURE | 2/16/16 DATE |
| RE/MAX RESULTS BROKER OR COMPANY NAME | IN LICENSE # | Rebecca Fischer BK Trustee for PRINTED | |
| ACCEPTED BY: MANAGING BROKER | DATE | SELLER'S SIGNATURE | DATE |
| | | estate of Darwin Mullins PRINTED | |

Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR). This form is restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice.
**Form #01.** Copyright IAR 2016

29925 Priscilla Ct, Elkhart, IN 46517-9005
(Property Address)



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com Rebecca Fischer

BK GLOBAL™
REAL ESTATE SERVICES

**Listing Addendum**

1. Buyer acknowledges that this property is subject to Short Sale Lender Approval & Bankruptcy Court Approval.

2. Buyer acknowledges that Sale is subject to Lender Consent. The Bankruptcy Estate Fee shall be paid to the Estate at the close of escrow.

3. Buyer acknowledges that the property is sold "AS IS". Absolutely no repairs will be authorized.

4. **MLS Remarks must include: Offers will not be reviewed, counter-offered, accepted or rejected until 15 days from the list date of the property. All offers must be submitted online at www.bankruptcylistings.com**

5. Escrow will be opened with:

   Boston National Title Company
   Michelle Leak-Escrow Officer
   129 W. Trade St. 9th Floor
   Charlotte, NC 28202
   Direct: 704-373-4030
   mleak@bostonnationaltittle.com

6. The Seller in this transaction is exempt from providing the HOA Resale Package as this is a court ordered sale. Buyer will be solely responsible for any fees related to the resale package, capital contributions and transfers fees, if applicable to the transaction.

7. Buyer may cancel the Residential Purchase Agreement for any reason without penalty any time after 120 days from acceptance, if Short Sale Lender Approval has not been received.

8. Upon Bankruptcy Court Approval of sale, buyer agrees to close escrow as per Federal Bankruptcy Trustee instruction.

9. Buyer shall be responsible for connecting utilities to perform inspections requested as part of the due diligence period. Buyer shall use this period to satisfy themselves of all mechanical, structural, functional related concerns regarding the property. Buyer shall have the same amount of time to obtain, review, & satisfy themselves of any association rules, regulations & fees, if applicable. Buyer shall release CIC contingency within 10 days of Short Sale Lender Approval, if applicable.

10. Buyer shall be responsible for the connection of utilities to perform inspections/final walk through pursuant to the Residential Purchase Agreement.

11. Buyer acknowledges that the seller may not have access to garage remotes, mail box keys or access related keys to property. Seller will tender any items available at the close of escrow but shall not be liable to provide items not in his/her possession.

12. Buyer shall immediately disclose if he/she is related to the debtor. Buyer understands that most lenders require an Arm's Length Disclosure, and some lenders will not allow a family relation to purchase a property in which a related debtor may have interest.

13. Property must be purchased in an individual name or LLC. Offers in the name of a corporation, trust or partnership are not acceptable.

14. Seller will not pay for Appraisal and/or Home Warranty.

15. Buyer is aware it may take up to 10 days to receive a response from the Federal Bankruptcy Trustee (Seller).

16. Buyer understands and agrees that this addendum shall take precedence where any terms conflict with the original Residential Purchase Agreement.

DATED this 16 day of February, 2016.

**Trustee**

By: [signature]
Signature

Rebecca H. Fischer
Print Name

TRUSTEE
Title

**Broker/Agent**

By: [signature]
Signature

Fred Johnson
Print Name

Broker
Title